Bosque County v. J. E. Alexander.

Decided February 3, 1906.

**Public Road—Dedication.**

Whether or not land has been dedicated to the public depends upon the intention of the owner as evidenced by all the facts and circumstances surrounding the transaction. Evidence considered and held sufficient to support a finding that no dedication had been made.

Appeal from the District Court of Bosque County. Tried below before Hon. O. L. Lockett.

*Richard Kimball,* for appellant.—The court erred in rendering judgment in favor of plaintiff and against. defendant. Oswald v. Grenet, 22 Texas, 99; Gilder v. City of Brenham, 67 Texas, 349; Albert v. Railway Co., 2 Texas Civ. App., 666; Bellar v. City of Beaumont, 55 S. W. Rep., 410; 13 Cyc., 451, 452, 453, 465, 473.

Although the use of the dedicated road must be confined to a definite line, slight deviations will not destroy the rights of the public. Compton v. Waco Bridge Co., 62 Texas, 722; Click v. Lamar Co., 79 Texas, 123.

A person merely weak minded is not incapable of dedicating a road to the public. Ellis v. Matthews, 19 Texas, 398; 1 Pars. Con., 383; Missouri Pac. R. R. Co. v. Brazzill, 72 Texas, 237; First National Bank of Navasota v. McGinty, 5 Texas Ct. Rep., 560; Williams v. Sapieha, 94 Texas, 433; 16 Am. and Eng. Ency. of Law, 629; 1 Story Eq. Jur., sec. 225; 1 Pars. Con., pp. 384, 385.

*Wm. M. Knight,* for appellee.—The facts and circumstances relied on to prove the existence of the intent to dedicate must be of a positive and unequivocal character. Since by a dedication valuable rights in land pass from the owner, no presumption of an intent to dedicate arises

unless it is clearly and expressly shown by his acts and declarations, or by a line of conduct, the only reasonable explanation of which is that a dedication was intended. 9 Am. and Eng. Ency. of Law, art. Dedication, pp. 38 and 42; Ayres v. Fellrath, 5 Texas Civ. App., 559; Ramthun v. Halfman, 58 Texas, 551; Worthington v. Wade, 82 Texas, 28; City of San Antonio v. Sullivan, 23 Texas Civ. App., 263.

SPEER, ASSOCIATE JUSTICE.—This was an action in trespass to try title brought by J. E. Alexander against Bosque County to recover a strip of land claimed by the county as a public road, in which there was a trial without a jury resulting in a judgment in favor of the plaintiff. Unless the county has title by dedication the appeal is without merit, and upon this question it becomes necessary to examine briefly the evidence upon which the court's judgment is based. The appellee testified: "I bought my farm on the Deadrick survey from T. W. Hudson and wife. Hudson acquired it from the heirs of Mrs. Lafon. Mrs. Lafon died something like five or six years ago. The land constituting the strip of land sued for (the road) was fenced before I bought it. The fence on the east side of the road was built in the summer of 1893. The fence on the north or west side was not built until the following year. . . . The travel covered land 100 yards or so in width. It was not confined to any particular strip or place, but went first in one place and then in another. If it got muddy in one trail the travel moved to one side or the other, and thus covered a wide strip clear across the tract, being confined to no particular place nor within any particular limits. The fence was built by Mr. Glass and Mr. Hudson, sons-in-law of Mrs. Lafon. The lane across my land is about one mile in length. After I bought the land I reset the fences along the road, straightening them in places and narrowing the lane to its present width. Prior to that the fences were not run in straight lines, but the wire was fastened to trees in many places where they were conveniently situated, thus making the lane quite irregular· in width. In some places it would be very wide, 50 yards or so, and in other places it was of different width. The road ran along the prairie the most of the way, but for about a quarter of a mile it ran through some post oak timber. The road turned and wound about, striking. the glades and open places a part of the way, and at some places the timber had been cut out. The old trails through the timber and across the prairie are still plainly to be seen extending in width as far as 100 yards. . . . I knew Mrs. Lafon for ten or twelve years prior to her death. She was very weak and feeble mentally. She had twelve years before been in the insane asylum two or three times. She was generally regarded by the neighbors as very weak mentally. She acted in a queer manner. . . . I bought the land from Hudson in 1901. No reservation was made of the road in the deed to me. I have paid taxes on full acreage described in my deed. The old road has run across this tract of land for many years. I have known it for twelve or fifteen years. It was known as the Morgan and Hill Creek Road."

Hudson, appellee's grantor, testified: "In 1886 or 1887 a jury of view viewed out the road across Mrs. Lafon's homestead as it now

runs, and it has been worked ever since by men subject to road duty in that section called out by the overseer. I have myself during the same time helped to work it as a road hand nearly every year. I know when the road was viewed out. I don't know whether or not Mrs. Lafon knew it at the time. She probably knew of the road being there soon after it was viewed out. I never heard her say anything about the road one way or the other at that time that I recollect, nor whether she objected or consented to it. . . . In the spring of 1893, the grass belonging to Mrs. Lafon was lying out and she said to me and to Mr. Glass, 'I'll furnish the wire and you and Glass fence the land and you can have the use of it as long as I live.' . . . According to my recollection about seven or eight years ago the road was reviewed out again by a jury of the Commissioners' Court as I suppose. Mrs. Lafon knew of the road being reviewed the second time, and she said something to me about getting pay for the road. My recollection is that I suggested to her that as the road was already there and had been there just to let it alone and charge nothing, and if she ever asked for or received pay for the road I don't know it. So far as I know Mrs. Lafon continued to pay taxes on all of the land in the homestead tract. When I bought out the heirs no reservation was made on account of a road through the land."

Glass, a son-in-law of Mrs. Lafon, testified as did the witness Hudson, and further that: "Up to the time the road was reviewed out the second time we supposed the road was a legal one. When it was reviewed out the second time we began to doubt whether it was a legal road or not and thought of asking pay for it, but afterwards concluded as it was already there and convenient to the country we would make no charge for it. I mean myself and Mrs. Lafon as I owned a piece of land north of the creek. This conversation with Mrs. Lafon was never communicated to any one outside of the family." The county introduced in evidence orders of the Commissioners' Court appointing an overseer and apportioning hands to the road in question for practically every year since the year 1888. Several witnesses testified that Mrs. Lafon was mentally quite weak and feeble and transacted most of her business through her sons-in-law, Hudson and Glass. She was over seventy years of age at her death. The county makes no claim to a legal condemnation of the land, but its right rests upon the alleged dedication by Mrs. Lafon. Whether or not there was a dedication depends upon the intention of Mrs. Lafon as evidenced by all the facts and circumstances surrounding the transaction, and we are not prepared to say that the evidence in the case is such as to require a finding that she intended to dedicate the strip of land across her farm for a public highway. While the evidence may have authorized a finding to that effect, it was not such as to compel it.

The judgment of the District Court is therefore affirmed.

*Affirmed.*

Writ of error refused.